UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DONALD WILLIAMS,

        Plaintiff,

  against                                  MEMORANDUM & ORDER
                                                      04-CV-3488 (NGG)(RLM)

UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, NEW YORK CITY
HOUSING AUTHORITY and SELECTRIC ELECTRIC
CONTRACTING CO., INC.,

        Defendants.
-------------------------------------------------------------------X
GARAUFIS, United States District Judge.

       Plaintiff Donald Williams ("Plaintiff" or "Williams") has brought suit against the United States Department of Housing and Urban Development ("HUD"), New York City Housing Authority ("NYCHA") and Selectric Electric Contracting Co., Inc. ("Selectric"), alleging that Selectric fraudulently and illegally rescinded an offer of employment, and HUD erred in dismissing Plaintiff's administrative complaint, in violation of Section 3 of the HUD Act of 1968, 12 U.S.C. § 1701u.

       Defendants NYCHA and Selectric move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons set forth below, Defendants' motions are GRANTED, and Plaintiff's complaint is dismissed.

I.      FACTUAL BACKGROUND

       Plaintiff has been a resident of the Arverne Public Housing Project in New York City since August 15, 2001. (Compl. ¶¶ 2, 8.) In 2001, Selectric received a contract from NYCHA to perform work in the Edgemere/Arverne Public Housing Project. (Id. ¶ 7.) In August, September, and October 2001, Williams applied for employment as a laborer with Selectric. (Id.

¶ 8.) However, Selectric never hired plaintiff, despite "promising Plaintiff that he would be hired under Section 3 and put into an apprenticeship." (Id. ¶ 9.) Further, Selectric hired two laborers who were not residents of the Arverne/Edgemere houses on October 24, 2001. (Id. ¶ 10.) On September 28, 2001, and again on November 7, 2001, Williams filed an administrative complaint against NYCHA with the U.S. Department of HUD, maintaining that Selectric denied him employment and hired non-residents in violation of the Section 3 program. On September 9, 2003, HUD found that Selectric had already reached the required number of Section 3 hires at the time that Williams became eligible for employment, which HUD determined was October 4, 2001. (Id. ¶ 12.) Williams appealed this decision, informing HUD that he became eligible for employment in August 2001, but HUD rejected Williams' complaint, finding that there "were no new hires of Section 3 residents after October 2001 when . . . Mr. Williams was eligible for Section 3 certification." (Id. ¶ 14.) Williams maintains that HUD erred in denying his administrative complaint, and seeks $500,000 in damages, interest, and costs for violating 12 U.S.C. § 1701u. (Compl. ¶ 15.)

By stipulation, HUD was dismissed as a defendant in this action. (Stipulation and Order, dated Apr. 19, 2005.) Accordingly, this action proceeds only against NYCHA and Selectric (collectively, "Defendants").

Defendants now move to dismiss the complaint for failure to state a claim. Defendant NYCHA argues that Plaintiff's suit fails because the HUD Act provides no private right of action for project residents to enforce Section 3 requirements. (Def. NYCHA Mem. Supp. Mot. Dismiss 3-11; Def. NYCHA Reply Mem. Supp. Mot. Dismiss 5-9.) Defendant Selectric urges dismissal on the basis that Plaintiff has no private right of action, and on the ground that Selectric was not a state actor in its performance of its contract with NYCHA, which is required

2

to maintain a suit under Section 1983.  (Def. Selectric Mem. Supp. Mot. Dismiss 4-7; Def. Selectric Reply Mem. Supp. Mot. Dismiss 3-6.)  Plaintiff opposes Defendants' motions, arguing that Section 3 does provide him with a right of action, and Selectric is a state actor.  (Pl's Mem. Opp. Mot. Dismiss 2-6.)  Defendant Selectric further seeks attorneys fees from Plaintiff pursuant to 42 U.S.C. § 1988(b) for bringing suit against Selectric.  (Def. Mem. Supp. Mot. Dismiss 8; Def. Reply Mem. Supp. Mot. Dismiss 7.)

**II.     DISCUSSION**

**A.     Standard of Review**

In reviewing a motion to dismiss for failure to state a claim brought pursuant to Fed R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff.  See Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

**B.     Motion to Amend Complaint to Assert a Cause of Action under Section 1983**

Plaintiff requests that this complaint be deemed as asserting a cause of action under 42 U.S.C. § 1983.  (Pl. Mem. Opp. Mot. Dismiss at 6.)  As Defendants' motions imply consent to Plaintiff's application, this court deems Plaintiff's suit to allege that Defendants violated the HUD Act, 12 U.S.C. § 1701u, which is enforceable pursuant to Section 1983.

3

**C.     Related Cases Brought by Plaintiff Donald Williams**

This court has previously ruled in two related cases involving this plaintiff and defendant NYCHA, Williams v. NYCHA and Fervent ("Fervent"), No. 05-CV-539, *slip op.* (E.D.N.Y. Mar. 3, 2006), and Williams v. NYCHA and Zaffuto ("Zaffuto"), No. 05-CV-428, *slip op.* (E.D.N.Y. Aug. 28, 2006), granting motions to dismiss by NYCHA in each case that are identical to the instant motion by Defendants. In Fervent and Zaffuto, I found that, even assuming that residents of public housing projects have a private right of action under Section 3 of the HUD Act, the actions had to be dismissed because Plaintiff was "barred by the applicable statute of limitations from maintaining th[ese] lawsuit[s]." Fervent, No. 05-CV-539, *slip op.*, at 5 (E.D.N.Y. Mar. 3, 2006); Zaffuto, No. 05-CV-428, *slip op.*, at 4 (E.D.N.Y. Aug. 28, 2006). In the instant motion, however, it is undisputed that the instant suit is not time-barred. I shall thus proceed to the Defendants' primary ground for dismissal, that 12 U.S.C. § 1701u does not provide Plaintiff with a private right enforceable under § 1983.

**D.     Private Right of Action**

I first address Defendants' contention that the Supreme Court's decision in Gonzaga University v. Doe, 536 U.S. 273 (2002) controls the issue facing this court, i.e. whether 12 U.S.C. § 1701u confers an individual right enforceable through 42 U.S.C. § 1983. Section 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

4

In Gonzaga, the Supreme Court clarified the test that courts must utilize to determine whether a law gives rise to an individual right enforceable under Section 1983. For a court to find a statute enforceable under § 1983 it is insufficient, as previous Supreme Court cases suggested, for the plaintiff to fall "within the general zone of interest that the statute is intended to protect," id. at 283 (citing Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508-09 & n.9 (1990); Suter v. Artist M., 503 U.S. 347, 363-64 (1992); Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28 n.1 (1981)), instead, Section 1983 enforces only "unambiguously conferred" rights. Id. Courts considering whether a statute confers a right enforceable under § 1983 "require[s] a [threshold] determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." Id.

Upon a finding that the statute confers an individual right, "the right is presumptively enforceable by § 1983." Gonzaga, 536 U.S. at 285. The rebuttable presumption of the enforceability of rights under § 1983 can be overcome by a showing that Congress "shut the door to private enforcement, either expressly, through specific evidence from the statute itself . . . or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Id. at 285 n.4; see also City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 120 (2005) ("Our cases have explained that evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" (quoting Blessing v. Freestone, 520 U.S. 329, 341 (1997))).

The Gonzaga Court instructs lower courts to discern from "the text and structure of a statute" whether Congress intended to create an individual right. Id. at 286. For a statute to confer a private right of action under Section 1983, it must contain "rights-creating" language

5

that is "phrased in terms of the persons benefitted,'" id. at 284 (quoting Cannon v. University of Chi., 441 U.S. 677, 692 n.13 (1979)), rather than an "aggregate" focus on the policies and procedures of the charged agency. Id. at 287-89; see also Taylor v. Vermont Dep't of Ed., 313 F.3d 768, 785 (2d Cir. 2002). Further, the creation by Congress of administrative procedures to address violations of a statute suggests a congressional intent not to confer a private right of action. Id. at 288.

The Gonzaga Court applied this standard to the relevant section of the Family Educational Rights and Privacy Act ("FERPA"), which provides:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . .) of students without the written consent of their parents to any individual, agency, or organization.

Gonzaga, 536 U.S. at 279 (quoting 20 U.S.C. § 1232g(b)(1)). The Court found that the provision is "two steps removed from the interests of individual students and parents," because the provisions command only the actions of the Secretary of Education, not the educational agency. Id. at 287 (quoting 20 U.S.C. § 1232g(b)(1)); see also Rabin v. Wilson-Coker, 362 F.3d 190, 201 (2d Cir. 2004). As in other statutes with an "aggregate," and not individual, focus, "FERPA's nondisclosure provisions further speak only in terms of institutional policy and practice, not individual instances of disclosure." Gonzaga, 536 U.S. at 288. Thus, to the extent that students and parents have non-disclosure rights under FERPA, those rights are subsumed within the provisions' structural emphasis on the "policy or practice" of the funded institution. Id. at 288-89. Compliance with the statute merely requires funded agencies to "comply substantially" with FERPA's requirements. Id. at 288. Lastly, the congressional intent not to confer an enforceable right with FERPA is demonstrated by Congress's express authorization to the Secretary of

6

Education to "'*deal with violations*' of the Act, § 132g(f) (emphasis added), . . . [and the requirement] to 'establish or designate [a] review board' for investigating and adjudicating such violations, § 1232g(g)." Id. at 288. Consequently, the Supreme Court found that FERPA's non-disclosure provisions did not confer upon students and parents a right enforceable under § 1983. Id. at 290-91.

Post-Gonzaga Supreme Court cases have not further clarified the test for the threshold question of whether a statute creates an individual right.[1] However, the Gonzaga Court did not overrule previous cases which found that other statutes created rights that are enforceable through Section 1983. See Gonzaga, 536 U.S. at 282. As these cases are instructive to this analysis, I shall briefly recite them here. In Wright v. Roanoke Redevelopment & Housing Authority, 479 U.S. 418 (1987), public housing tenants challenged pursuant to § 1983 a public housing authority under the United States Housing Act of 1937, 42 U.S.C. § 1401, *et seq*., to enforce an amendment that imposed a ceiling for rent charged to low-income people living in public housing projects. Wright, 479 U.S. at 420-21. The amendment in relevant part states:

> A family shall pay as rent for a dwelling unit assisted under this chapter . . . the highest of the following amounts, rounded to the nearest dollar: (1) 30 per centum of the family's monthly adjusted income; (2) 10 per centum of the family's monthly income; or (3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by

---

[1] The only post-Gonzaga Supreme Court majority opinion that discusses Gonzaga at length is City of Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005), in which the Court addressed the standard by which the rebuttable presumption that a right is enforceable under § 1983 is overcome. Id. at 120. In Jackson v. Birmingham, 544 U.S. 167 (2005), a post-Gonzaga case, the Supreme Court held that Title IX of the Education Amendments of 1972, 20 U.S.C. § 16821 *et seq*., passed under Congress's spending power, confers an implied private right of action for retaliation. Id. at 191. However, the majority opinion of that case did not discuss whether Title IX "unambiguously confers" this right. See Jackson, 544 U.S. at 191 (Thomas, J., dissenting).

7

>such agency to meet the family's housing costs, the portion of such payments which is so designated.

Wright, 479 U.S. at 420 n.2 (quoting 42 U. S. C. § 1437a). The Supreme Court found significant in Wright that the grievance process created for administrative review of housing authority actions was not comprehensive, was not nationally centralized, and could not accommodate a group-based grievance. Id. at 424-26. The Gonzaga Court reasoned that key to the holding in Wright that the Housing Act conferred an individual right was the fact that Congress spoke in clear terms, with "sufficiently specific and definite" clarity as to the entitlement conferred on tenants, that those rights were enforceable under § 1983. Gonzaga, 536 U.S. at 280.

In Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990), the Court found that a provision of the Medicaid Act that required[2] a state plan to establish a reimbursement schedule for health care providers confers a private right of action to health care providers to challenge a state reimbursement method. Id. at 462. The statute at issue in that case required states to devise a plan that provided "payment . . . of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan." Id. at 510 (quoting 42 U.S.C. § 1396a(a)(13)(A)). The Court held that because the statute "is cast in mandatory rather than precatory terms," and requires the Secretary to withhold funds if the state plan does not comply with the statute, it conferred a private right of action to health providers. Id. at 512. The Gonzaga Court found significant in Wilder that States had "to pay an 'objective' monetary entitlement to individual health care providers, with no sufficient administrative means of enforcing the requirement against States that failed to comply." Gonzaga, 536 U.S. at 280-81.

---

[2] 42 U.S.C. § 1396a(a)(13)(A) was amended in 1997 and no longer includes this provision.

Suter v. Artist M., 503 U.S. 347 (1992) involved a challenge to a state adoption agency under 42 U.S.C. §§ 672-675(4)(A), which requires States to submit a plan to the Secretary of Health and Human Services that has sixteen listed requirements, including that the state "in each case, [makes] reasonable efforts . . . (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home . . . ." Suter, 503 U.S. at 352 (quoting § 671(a)(15)). The Court reasoned that while the statute requires the States to adopt a plan, "that requirement only goes so far as to ensure that the State have a plan approved by the Secretary which contains" the enumerated requirements. Id. at 358. Further, the Court found that the language of the Act imposed no requirements beyond that the plan be "reasonable," and that this broad limit evinced congressional intent to leave discretion as to the plan's reasonableness to the state. Id. at 360. Holding that the Act was not enforceable through § 1983, the court reasoned that the existence of an administrative remedy, while not "comprehensive" in that it did not provide class-wide relief, suggested Congress's intent not to confer a private right of action. Id. at 360-61.

This exposition reveals a tension between Wright and Wilder on the one hand and Suter and Gonzaga on the other. The Gonzaga Court refrained from overruling the core holdings in Wright and Wilder that the statutes under question are enforceable under § 1983. However, the analysis announced in Suter and refined in Gonzaga could easily be construed to find the statutes under consideration in Wright and Wilder to be unenforceable.[3] However, the above discussion

---

[3] See, e.g., Evelyn V. v. Kings County Hosp. Ctr., 819 F. Supp. 183, 194 & n.5 (E.D.N.Y. 1993) (Raggi, J.) (Pre-Gonzaga decision noting that "[s]ome commentators have found Suter and Wilder irreconcilable.").

9

compels this court to conclude that Gonzaga did not intend to overrule the outcomes in Wright and Wilder.

A close reading of those cases in the context of the analytical framework announced in Gonzaga suggests that a court considering whether a statute passed under Congress's spending power is enforceable under § 1983 should scrutinize the statute to determine whether (1) its structure emphasizes the rights of the intended beneficiaries, or the funding obligations of the governmental agencies; (2) the statutory requirements focus on individual beneficiaries, or explain benefits in the aggregate, such as a policy or practice; (3) the putative right is precatory or mandatory; and (4) whether the statute creates an administrative remedy that is inconsistent with enforcement under § 1983.

This framework is supported by Second Circuit decisions that have labored to apply Gonzaga. In Taylor v. Vermont Dep't of Educ., 313 F.3d 768 (2d Cir. 2002), the Second Circuit considered a records-access provision of FERPA (the same statute at issue in Gonzaga), which states:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents, the parents of students who are or have been in attendance at a school of such agency or at such institution, as the case may be, the right to inspect and review the education records of their children. If any material or document in the education record of a student includes information on more than one student, the parents of one of such students shall have the right to inspect and review only such part of such material or document as relates to such student or to be informed of the specific information contained in such part of such material. Each educational agency or institution shall establish appropriate procedures for the granting of a request by parents for access to the education records of their children within a reasonable period of time, but in no case more than forty-five days after the request has been made.

Id. at 784-85 (quoting 20 U.S.C. § 1232g(a)(1)(A)). The Second Circuit, distinguishing the provision at bar from the FERPA provision found unenforceable in Gonzaga, noted that the

10

statute "combines elements of both the funding-prohibition language that the Gonzaga Court held does not confer an individual right and the individually focused language that evidences an intent to create an enforceable right." Id. at 785. However, the court found that the structure of the statute, in which the first sentence focuses on the obligations of the Secretary of Education, shows an intent that the second sentence is merely "a limitation on which records schools should make available," and not a right enforceable under § 1983. Id.; see also Morningside Supermarket Corp. v. New York Dep't of Health, 432 F. Supp. 334, 342-43 (S.D.N.Y. 2006) (finding that regulations focused exclusively on funding obligations of State agency is not enforceable under § 1983).

On the other hand, the Second Circuit has found enforceable under § 1983 a law directed at the individual litigant, and that provides for mandatory action by the agency. In Rabin v. Wilson-Coker, 362 F.3d 190 (2d Cir. 2004), the statute under consideration, 42 U.S.C. § 1396r-6, provides that States receiving funding for welfare programs provide benefits to certain families eligible for Aid to Families with Dependent Children ("AFDC"), a former welfare program, develop a plan as set forth by the following provision:

> each State plan approved under this subchapter must provide that each family which was receiving [AFDC] in at least 3 of the 6 months immediately preceding the month in which such family becomes ineligible for such aid, because of . . . income from employment . . . remain eligible for assistance under the plan . . . during the immediately succeeding 6-month period.

42 U.S.C. § 1396r-6(a); see Rabin, 362 F.3d at 201. The Second Circuit found that the statute's focus on individual entitlement evinces an intent to confer a right, and to the extent that the statute merely requires a State plan, the Medicaid Act explicitly warns that "such [a] provision is not to be deemed unenforceable" on this ground. Id. at 202 (quoting 42 U.S.C. § 1320a-2). Accordingly, the Court of Appeals found this statute enforceable. Id.; see also Walker v.

11

Clemmons, No. 03-Civ. 0369, 2005 U.S. Dist. LEXIS 4229, at *11-*13 (S.D.N.Y. Mar. 22, 2005) (Food Stamp Act with its emphasis on intended beneficiaries, like the Medicaid Act's focus on welfare recipients in Rabin, "unambiguously" confers a right enforceable under § 1983.); NEXTG Networks of New York v. New York, 03-Civ.-9672, 2004 U.S. Dist. LEXIS 25063, at *30-*33 (S.D.N.Y. Dec. 10, 2004) (Telecommunications Act, which provides that "[n]o State or local statute or regulation . . . may prohibit . . . any entity to provide . . . telecommunications service," 47 U.S.C. § 253(a), enforceable under § 1983 because it is phrased in terms of persons benefitted, is concerned with whether the needs of the person benefitted is satisfied, and enforcement is not exclusively vested in the federal agency).

With these principles in mind, I shall now turn to the statute at issue. The purpose of 12 U.S.C. § 1701u is to "ensure that the employment and other economic opportunities generated by Federal financial assistance for housing and community development programs shall, to the greatest extent feasible, be directed toward low- and very low-income persons, particularly those who are recipients of government assistance for housing." 12 U.S.C. § 1701u(b). Consistent with this goal, HUD "shall require that public . . . housing agencies, and their contractors and subcontractors, make their best efforts, consistent with existing Federal, State, and local laws and regulations, to give to low- and very low-income persons the training and employment opportunities generated by" federally funded projects. 12 U.S.C. § 1701u(c)(1)(A). The priority for such opportunities, in descending order, are: (1) "residents of the housing developments for which the assistance is expended;" (2) "residents of other [public] developments" managed by the public agency; (3) "participants in Youthbuild programs;" and (4) "to other low- and very low-income persons residing within the metropolitan area . . . in which the assistance is expended." 12 U.S.C. § 1701u(c)(1)(B)(i)-(iv).

Plaintiff argues that § 1701u contains an enforceable right by public housing residents to hiring preference in federal contracts on the housing projects where they reside. (Pl's Mem. Opp. Mot. Dismiss at 2-4.) Inexplicably, Plaintiff's counsel, in her briefs, does not mention Gonzaga or other Supreme Court and Second Circuit cases governing this inquiry, and furthermore, the authority on which Plaintiff's counsel relies is misplaced. Indeed, as Plaintiff notes, those courts that have considered whether this provision is enforceable under § 1983 have generally found in the affirmative. See Ramirez, Leal & Co. v. City Demonstration Agency, 549 F.2d 97, 105 (9th Cir. 1976); Drake v. Crouch, 377 F. Supp. 722, 723-25 (M.D. Tenn. 1971), aff'd, 471 F.3d 653 (6th Cir. 1972); Milsap v. HUD, No. 4-89-635, 1990 U.S. Dist. LEXIS 13954, at *25-*26 (D. Minn. Oct. 18, 1990) (reasoning that private right of action does exist under § 1701u, but not under facts alleged by plaintiff); but see Concerned Mbrs. Comm. of Chatham Park Village Coop., No. 81-C-2699, 1981 U.S. Dist. LEXIS 13608, at *3 (E.D. Il. July 13, 1981) (dismissing case because plaintiffs "failed to suggest any reason why the court should imply a private cause of action on behalf of these plaintiffs"). However, these are pre-Gonzaga cases that followed an analytical framework that Gonzaga superseded.

Plaintiff's reliance on Stanley Price v. Housing Authority of New Orleans, No. 01-3016 § K(5), 2002 U.S. Dist. LEXIS 19553 (E.D. La. Oct. 11, 2002), an unpublished district court opinion, for the proposition that Plaintiff's claim is enforceable in a Section 1983 action, is similarly unavailing. (Pl.'s Mem. Opp. Mot. Dismiss at 2-4.) In Price, a *pro se* plaintiff alleged that the local housing authority and individual authority officers violated his rights under the Fifth and Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and 12 U.S.C. § 1701u, because defendants did not hire him and did not provide him a loan. Price, 2002 U.S. Dist. LEXIS 19553, at *3-*4. The court granted Plaintiff leave to amend his

13

complaint to assert a claim under § 1983. Id. at *12-*14. However, the judge noted "that the plaintiff has made insufficient allegations for any claim under . . . [the HUD] Act, and [the court] is not commenting on the merits or viability of a section 1983 action." Id. at *11 n.3. Price is thus inapposite.

I first note that the structure and text of § 1701u do not foreclose a congressional intent to confer a private right of action by a public housing resident against a housing agency and contractor for failure to employ him. The purpose of the statute is directed at providing a hiring preference to public housing residents, and the statute's detailed, multi-level scheme of preferences suggest an individualized, rather than an aggregate, focus. See Gonzaga, 536 U.S. at 287-89. Unlike other statutes found unenforceable by the Supreme Court, the requirement focuses on individual entitlement, rather than a "policy or procedure" creating the entitlement.[4] See Gonzaga, 536 U.S. at 287-89, Suter, 503 U.S. at 358; see also Rabin, 362 F.3d at 201 (finding that fact that statutory language stating state obligations towards individual beneficiaries instead of a state plan evinces the enforceability of a statute under § 1983). The statute's requirement that housing authorities and their contractors provide best efforts to employ public housing residents is thus distinguishable from Gonzaga and Taylor, in which the Supreme Court

---

[4] In this regard, HUD's administrative denial of Plaintiff's complaint is undoubtedly subject to judicial review under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2). See Abbott v. Gardner Laboratories, 387 U.S. 136, 140 (1967 (The APA creates a presumption in favor of review of agency actions); Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth., 339 F.3d 702, 708 (8th Cir. 2003) (reviewing APA challenge to HUD loan guarantee to a city pursuant to 42 U.S.C. § 3604(a), (b) and that HUD violated its obligation to affirmatively further fair housing under 42 U.S.C. § 3608(e)(5)). HUD is required to ensure that housing authorities and contractors make "best efforts" to give employment opportunities to public housing residents like Plaintiff. While HUD is not a current party to this case, Plaintiff's allegation that HUD denied his administrative complaint is certainly subject to review, on the grounds of arbitrariness and capriciousness, regarding its finding of the date he became a public housing resident.

and Second Circuit addressed a statutory provision focused primarily on the funding obligations of the Secretary of Education. See Gonzaga, 536 U.S. at 279 ("No funds shall be made available . . . .") (quoting 20 U.S.C. § 1232g(b)(1)); Taylor, 313 F.3d at 785 ("No funds shall be made available . . . .") (quoting 20 U.S.C. § 1232g(a)(1)(A)); see also Morningside Supermarket Corp., 432 F. Supp. at 342-43. Lastly, the statutory requirement that HUD provide "best efforts" is mandatory, not hortatory, and is certainly stronger than other provisions found enforceable under § 1983. See Wilder, 496 U.S. at 512; Wright, 479 U.S. at 424-26; Gonzaga, 536 U.S. at 280; see also Ramirez, Leal & Co., 549 F.2d at 105 (Statutory command that local authority to the "greatest extent feasible" award contracts to local businesses "means what it says, the maximum, and . . . defendants were therefore obligated to take every affirmative action that they could properly take to make the award to . . . ." local businesspeople like plaintiff.); Schmelzer v. New York, 363 F. Supp. 453, 457-58 (E.D.N.Y. 2003) (Seybert, J.) (Finding enforceable 20 U.S.C. § 1400 which "ensure[s] that the rights of children with disabilities [have available a free *appropriate* public education] and parents of such children are protected." (emphasis supplied)); but see Suter, 503 U.S. at 360.

Furthermore, Defendants' argument that regulations creating an administrative complaint process suggest a congressional intent that § 1701u is unenforceable (Def. NYCHA's Reply Mem. Supp. Mot. Dismiss at 8; Def. Selectric Mem. Supp. Mot. Dismiss at 1) is without merit. The Gonzaga Court held that where administrative procedures for enforcement are *express* in the statute, it weighs against the creation of a private right of action. See Gonzaga, 536 U.S. at 289-90. While an administrative complaint procedure is in place for HUD to review alleged violations of § 1701u, 24 C.F.R. § 135.70, HUD's authority to create administrative procedures derives from a general statutory statement of HUD's powers: "The Secretary may . . . make such

15

rules and regulations as may be necessary to carry out his functions, powers, and duties." See 42 U.S.C. § 3535(d). The statutory authorization in question is silent regarding the creation of administrative remedies, and hence does not suggest an intent to foreclose enforcement under § 1983. See City of Rancho Palos Verdes, 544 U.S. at 122 ("The ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983."); Wright, 479 U.S. at 424-26. Nor do HUD's regulations providing for administrative review inform this court about Congress's intent to confer a private right of action. This conclusion is compelled by Alexander v. Sandoval, 532 U.S. 275 (2001), in which the Supreme Court held that a regulation by itself does not demonstrate Congress's intent regarding a private right of action. See id. at 291 ("Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

Nevertheless, this court cannot state that § 1701u provides residents with an "unambiguously conferred" right to preferences in hiring for federal contracts on public housing projects where they reside. Critical to this inquiry, it is at this point axiomatic that "*the plaintiff must demonstrate* that" the statute creates an individual right. City of Rancho Palos Verdes, 544 U.S. at 120 (emphasis added); see also Gonzaga, 536 U.S. at 283. In this regard, Plaintiff has failed to provide this court with any persuasive authority indicating that § 1701u confers an individual right to sue for a hiring preference. While § 1701u evinces more of a congressional intent of enforceability than statutes found unenforceable by the Supreme Court in Suter, Gonzaga, and by the Second Circuit in Taylor, Plaintiff has provided this court with no reason to find a putative right to a hiring preference in § 1701u enforceable. As Plaintiff has failed to demonstrate to this court that such a right exists, this court declines, on the facts of this case and the briefing on these motions, to find § 1701u enforceable under § 1983.

16

**E.     State Action**

Assuming, *arguendo*, that Plaintiff has a right under § 1701u to a preference in hiring, Plaintiff's action would still not survive, because Plaintiff fails to allege that his failure to be hired was the result of state action.  Defendant Selectric argues that "a private entity merely engaged in performing a public contract is an insufficient basis for treating such entity as a state actor for Section 1983 purposes."  (Def. Selectric Mem. Supp. Mot. Dismiss at 6.)  Plaintiff makes no allegations regarding any actions by Defendant NYCHA.  Therefore, this action may only be maintained against Defendants if Plaintiff averred sufficient facts that Defendant Selectric, in denying Plaintiff employment, was a state actor under § 1983.

"An action under § 1983 cannot, of course, be maintained unless the challenged conduct was attributable at least in part to a person acting under color of state law."  Kam Shing Chan v. City of New York, 1 F.3d 96, 106 (2d Cir. 1993).  Central to the issue of state action is the question "is the alleged infringement of federal rights 'fairly attributable to the State?'"  Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (quoting Lugar v. Edmondson Oil. Co., 457 U.S. 922, 937 (1982)).  Conduct "by a private entity constitutes state action only when 'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself.'"  Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 229 (2d Cir. 2004) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)).  The Second Circuit has described the "close nexus" requirement as follows:

> The "close nexus" test is not satisfied merely by the fact that the private entity is a business affected with the public interest . . . .  Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts. Such responsibility may be found when, after the facts are sifted and weighed, it is evident that a state or its political subdivision has exercised coercive power or has provided such significant

17

>encouragement, either overt or covert, that the choice must in law be deemed to be that of the [state or political subdivision].

Chan, 1 F.3d at 106.

It is clear, with these principles in mind, that Plaintiff has failed to allege facts sufficient to find Defendant Selectric to be a state actor. Plaintiff's Complaint states that Defendant NYCHA "owned, operated, maintained and controlled the Arverne/Edgemere Houses as a HOPE VI program site and was a participant in the Section 3 program with HUD." (Compl. ¶ 5.) Plaintiff further alleges that NYCHA hired Selectric to perform Section 3 work on the Arverne/Edgemere Houses, and that Selectric had to hire pursuant to § 1701u. (Id. ¶ 7.) These allegations do not suggest that NYCHA had any involvement whatsoever in Selectric's alleged hiring activities. Therefore, Plaintiff has failed to allege that NYCHA "exercised coercive power or . . . significant encouragement" in Selectric's decision not to hire Plaintiff. Chan, 1 F.3d at 106.

Notwithstanding the lack of NYCHA's direct or indirect involvement in the activities of which Plaintiff complains, Plaintiff argues that the facts alleged in the complaint are sufficient to establish the requisite "close nexus" between NYCHA and Selectric under Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001). (Pl.'s Mem. Opp. Mot. Dismiss at 5.) In Brentwood, the Supreme Court considered whether an association of public and private schools organized to regulate interscholastic sports was a state actor under § 1983 doctrine. The Supreme Court found that because the vast majority of the association's membership consisted of public schools, represented by public school officials in their official capacity, who "do not merely control but overwhelmingly perform all but the purely ministerial acts by which the Association exists and functions in practical terms," the association was

sufficiently entangled with its public school members to be a state actor for the purposes of § 1983.  Id. at 299-300.  Brentwood is clearly distinguishable from the facts alleged in the instant action, because Williams makes no allegation that Selectric is composed of public officials, or that NYCHA directs Selectric's day-to-day workings on the worksite.  See Doe v. Harrison, 254 F. Supp. 2d 338, 343-44 (S.D.N.Y. 2003) (distinguishing Brentwood on same grounds).

This court therefore finds that Plaintiff's allegations do not establish a close nexus between Selectric and NYCHA that would support this court holding that Selectric is a state actor that can be sued under § 1983.  Furthermore, inasmuch as Defendant does not allege that NYCHA was involved in Selectric's actions in failing to hire Plaintiff, this suit cannot be maintained against NYCHA either.  As Plaintiff has failed to allege facts sufficient to state a claim under § 1701u, Defendants' motion to dismiss the action under Fed. R. Civ. Pro. 12(b)(6) is granted as to both Defendants.

**F.      Motion for Attorney's Fees From Plaintiff**

Lastly, Defendant Selectric seeks attorney's fees from Plaintiff (Def. Selectric. Mem. Supp. Mot. Dismiss at 8) under 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.  Such a motion should be granted to the prevailing party where the action was "'frivolous, unreasonable, or groundless or that the plaintiff continued to litigate after it clearly became so.'"  Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984) (quoting Hughes v. Rowe, 449 U.S. 5, 14-15 (1980)).  In light of the fact that there was sufficient foundation for the proposition arguing enforceability of § 1701u and for a state action argument, attorney's fees are not warranted.  See, e.g., Tancredi, 378 F.3d at 229 (finding against state action but holding that

plaintiffs' allegations were not frivolous in light of the lack of rigid criteria in the "close nexus" test). Defendant Selectric's motion for attorney's fees is therefore denied.

### III. CONCLUSION

Defendants' motion to dismiss is GRANTED. This action is dismissed. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: September__, 2006             /s/ Nicholas G. Garaufis
Brooklyn, NY             NICHOLAS G. GARAUFIS
            United States District Judge